521 P.2d 604

**STATE of Arizona, Appellee,**

v.

**James D. PARLE, Appellant.**

**No. 2484.**

Supreme Court of Arizona,
In Division.

April 24, 1974.

Rehearing Denied May 28, 1974.

Gary K. Nelson, Atty. Gen., by Grove M. Callison, Former Asst. Atty. Gen., Phoenix, for appellee.

B. Michael Dann, Phoenix, for appellant.

HOLOHAN, Justice.

This appeal comes before us following appellant's conviction, after a plea of guilty, of the charge of murder in the first degree. Appellant was sentenced to life imprisonment in the Arizona State Prison.

By this appeal appellant challenges the acceptance of his plea of guilty and his sentence of life imprisonment.

The relevant facts in the record are that on December 28, 1970, between 6:00 and 6:30 p. m., motorcycle patrolman Albert Bluhm was shot and killed by appellant who fired the fatal shot from the rear of a stolen pickup camper. Jon Merkel, who was driving the camper at the time, testified that he saw a blinking red light in the side mirror of the truck and appellant told him it was the police.

Merkel maneuvered the camper to get away. A chase ensued. Merkel and appellant were yelling back and forth about what they should do. Subsequently Merkel heard a "long stream" of shots from the rear of the vehicle. Appellant told Merkel he had opened the rear door, fired at the patrolman and was sure he had killed the officer.

There was also testimony from Merkel and a Deborah Ward that the subject of the possibility of shooting police had arisen in conversation before, and appellant had said he would shoot if he was forced into the situation. Appellant and Merkel were fugitives from the State of Virginia, and they were armed wherever they went.

After the shooting, the pair drove to Tempe where they unloaded the camper at a deserted house. They then abandoned the camper and eventually fled the State. They were later arrested in Colorado for the shooting of a Utah police officer.

Phoenix police officers were sent to Colorado to interview appellant and Merkel, and the latter gave them a full statement of the events of the crime. Appellant did not make a statement, but he agreed to be voluntarily extradited upon a promise he would be given a psychiatric examination.

Appellant was returned to the State, pleaded not guilty and upon examination was found incompetent to stand trial. He spent approximately three months at the Arizona State Hospital. On December 27, 1971, pursuant to A.R.S. § 13–1621, H.4, a hearing was held and appellant was found competent to stand trial. The following day he entered a plea of guilty.

Appellant first urges that the trial court erred in explaining the possible sentence he could receive as a result of his change of plea. Appellant was told he could receive a life sentence or a sentence of death. He was also informed that parole was a matter for the parole board and that there was no guarantee he would ever be granted parole. Appellant now contends that he was never informed that only by a commutation from the Governor would he ever be eligible for parole. This, says appellant, fails in the requirement that a defendant be aware of the consequences of his guilty plea. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and State v. Darling, 109 Ariz. 148, 506 P.2d 1042 (1973).

The appellant was not misled. To the contrary, the trial judge told him:

"Do you understand that if a life sentence is imposed there is no time set by law as to when you may be eligible to apply for or be granted parole?

"Do you understand that?

"A. Yes.

> \*    \*    \*    \*    \*    \*

"Do you also realize that while at some point in time if you should receive a life sentence you may be able to apply for parole and that you have no guarantee or assurance that you would be ever granted parole?

"Do you understand that?

"A. Yes."

Appellant contends that he did not understand that the life sentence must be commuted to a term of years less than life before parole consideration may be considered; further commutation to a term of years involves the action of both the Parole Board and the Governor. The trial court did not outline the means used to parole one sentenced to life, but the court certainly made clear to appellant that there was no time set by law when he would be eligible for parole and further there was no assurance that he would ever be granted parole.

There was a sufficient explanation given to the appellant so that he could be said to have knowledge of the consequences of his plea. It was not necessary to inform him of the details of securing parole eligibility, State v. Ross, 108 Ariz. 245, 495 P.2d 841 (1972); the trial court had informed him that he might never be granted parole. This sufficiently advised appellant of the consequences resulting from his plea of guilty.

■ Next appellant urges his plea bargain would have allowed him to withdraw his plea if the sentence was anything other than life imprisonment and in fact his sentence was life imprisonment without a recommendation for parole. He feels this was a deception and under Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) violated due process. This position is without merit. First of all, appellant got just what he bargained for—a sentence to life imprisonment. Secondly, the trial judge's recommendation is nothing more than a recommendation and carries no binding force on the Board of Pardons and Paroles. State v. Nielsen, 108 Ariz. 251, 495 P.2d 847 (1972).

■ Appellant argues there was no factual basis to his plea in that he expressed a denial of his intention to kill Officer Bluhm. Boykin, *supra*. We feel that there was a factual basis in the plea after having read the voluminous record and the questioning of the accused at the time of the change of plea. The following transpired at the time of the plea:

"Q Did you willfully and deliberately shoot the police officer?

"A Yes.

"Q Did you think about what you were doing before you fired that rifle?

"A Yes.

"Q Did you know at the time that it was wrong to shoot the police officer?

"A Yes.

"THE COURT: Mr. Hyder, Mr. McDonald, did you have anything further?

"MR. HYDER: The state has nothing further, your Honor.

"MR. McDONALD: No, your Honor.

"THE COURT: Mr. Ross?

"MR. ROSS: One moment, your Honor, please.

"THE DEFENDANT: Yes, I would like to say that I didn't intend to kill him.

"THE COURT: All right, you have indicated that you didn't intend to kill the police officer.

"Is that correct?

"A Yes.

"Q At the time that you fired the shots, did you intend to fire the weapon?

"A Yes.

"Q And did you know that it was pointed toward a human being?

"A Yes, I did.

"Q And did you intend to fire toward that human being?

"A Yes.

"Q Did you realize at that time that the firing of the weapon in the direction of a human being could result in the death of that human being?

"A Yes."

These statements plus evidence in the record of prior discussions about the possibility of shooting police provide a more than adequate factual basis to support the defendant's plea to first degree murder.

■ Appellant also argues that the existence of the death penalty at the time of his plea unlawfully induced the guilty plea. We dealt with this same contention in State v. Nunez, 109 Ariz. 408, 510 P.2d 380 (1973), and in line with Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) held that making a plea to avoid the death penalty even though such a penalty is subsequently abolished does not invalidate the plea.

■ The argument by appellant that he received ineffective assistance of counsel because they failed to inform him properly of his parole rights and that in light of their knowledge of the pendency of a U. S. Supreme Court decision on the death penalty, they should have advised him to wait before making a plea, is but a naked assertion without foundation in the record. A reading of the record reveals that counsel for appellant performed with utmost zeal

and effectiveness and to ponder what they should have done in light of subsequent events would be fruitless.

■ Appellant claims that he was unconstitutionally denied credit for time spent in custody prior to sentencing. The court in sentencing fixed the date sentence was imposed as the commencement of the sentence.

In State v. Kennedy, 106 Ariz. 190, 472 P.2d 59 (1970), we stated that it is presumed the trial court takes into consideration the time served in county jail prior to sentencing the defendant. Therefore, there is no merit to appellant's contention.

■ Finally, appellant attacks the Arizona law [A.R.S. § 13-453 (1956)] prescribing life imprisonment for first degree murder as unconstitutional in that it is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution. He feels the possibility of never being eligible for parole under a sentence of life makes the law unconstitutional. This issue has been before the Court on previous occasions. In State v. Taylor, 82 Ariz. 289, 312 P.2d 162 (1957), we stated "[a]s long as the punishment is approximately proportionate to the type of crime and not so severe as to shock the moral sense of the community, its extent is necessarily within the discretion of the legislature." We reaffirmed this position in State v. Espinosa, 101 Ariz. 474, 421 P.2d 322 (1966).

Appellant's only substantial case arguing that the statute should be unconstitutional is Workman v. Commonwealth, Ky., 429 S.W.2d 374 (1968). Rape in Kentucky is punishable by life imprisonment without parole. In the *Workman* case two fourteen-year-old boys were charged with rape, transferred from juvenile court jurisdiction to adult prosecution, convicted and sentenced to the term prescribed by law which was life imprisonment without parole. The Court of Appeals of Kentucky reversed that portion of the sentence which directed confinement without parole. The Kentucky Court held that as applied to these juveniles the sentence was cruel and unusual punishment. Contrary to the position urged by appellant, the Court in *Workman* said:

"Rape is the only offense in this jurisdiction where punishment without benefit of parole may be inflicted. As a philosophical matter one is caused to wonder why this be so. It is difficult to believe that the legislature thought this offense worse than others, especially murder. But, be that as it may, it remains the law of this jurisdiction and in our opinion validly so when applied to adults. However, a different situation prevails when punishment of this stringent a nature is applied to a juvenile." (429 S.W.2d at 377)

For other cases on this subject see 33 A.L.R.3d 335–386.

■ Parole is a matter of grace, State v. Rice, 110 Ariz. 210, 516 P.2d 1222 (1973), and a person has no right to expect anything other than the possibility of parole. In Arizona there is no such sentence as life imprisonment without parole. It is true that prior to the amendment of A.R.S. § 13-453 there was no fixed time when a prisoner under a life sentence for murder became eligible for parole. The matter was left to the discretion of the Governor upon the recommendation of the Parole Board, but there was no legal impediment which would foreclose parole if the proper authorities wished to grant it, and parole has been granted in many cases over the years.

Considering the nature of the crime charged—the cold-blooded murder of a police officer—and the character of the defendant, his punishment is not cruel nor unusual punishment for his crime. State v. Maberry, 93 Ariz. 306, 380 P.2d 604 (1963).

Judgment and sentence affirmed.

HAYS, C. J., and CAMERON, V. C. J., concur.