JAMES CHESTER PHIPPS *v.* STATE OF MARYLAND

[No. 875, September Term, 1977.]

*Decided April 13, 1978.*

The cause was argued before GILBERT, C. J., and MASON and LISS, JJ.

*John L. Calhoun, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Edwin H. W. Harlan, Jr., State's Attorney for Harford County,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The Constitution of the United States is not an antiquated historical document, something that pertained to our forefathers but of little or no current significance. It is the viable foundation upon which our country was built and still lives. Aside from its being the cornerstone of the nation, perhaps its greatest virtue is its malleability, the ingredient which permits the Constitution to be molded to conform to contemporary standards, rather than being a rigid ancient mandate out of step with the times. The then Governor of New York, Franklin D. Roosevelt, in a radio address on March 2, 1930, observed that the "Constitution has proved itself the most marvellously elastic compilation of rules of government ever written."

In the instant case, we are asked by the appellant, James Chester Phipps, to declare that in the light of present societal standards the sentence of life imprisonment for the crime of rape in the first degree is a "cruel and unusual punishment," debarred by the Eighth Amendment.

Disclaiming knowledge of violating Md. Ann. Code art. 27, §§ 462 (first degree rape), 463 (second degree rape), 464 (first

degree sexual offense), 464A (second degree sexual offense), 464B (third degree sexual offense), 464C (fourth degree sexual offense), 553 (sodomy), 337 (kidnapping), 486 (robbery), 341 (larceny of goods of the value of less than $100.00), and 467 (receiving stolen goods of the value of less than $100.00), and common law assault and battery, because of his alleged intoxication, the appellant entered an *Alford*[1] plea in the Circuit Court for Harford County of guilty to the charge of first degree rape.

Judge Albert Close explained to Phipps, in almost laborious detail, the rights that are waived by such a plea, as well as the fact that the penalty that could be imposed for the crime was life imprisonment. After satisfying himself that there was a factual basis for the plea, Judge Close accepted it. The State then, as it had agreed to do in a plea bargain, *nolle prossed* the remaining ten (10) counts of the indictment.

After obtaining a pre-sentence investigation, the court, on March 18, 1977, imposed a sentence of life imprisonment upon Phipps. The judge recommended that therapy for Phipps be provided by the Division of Correction.[2]

Within a week, Phipps wrote a letter to the trial judge in which he said in part:

> "Please be informed of my right to recant my plea of Guilty to the charge of Rape.
>
> My right's were infringed upon from the day of my arrest wich i can prove."

Judge Close treated the letter as a petition for post conviction review.

A hearing on the matter was held before Judge Brodnax Cameron, Jr. Phipps set out thirteen (13) supposed errors, none of which had any substance, and his assigned counsel raised the additional issue of the constitutionality *vel non* of the imposition of a life sentence for the offense of first degree

---

**1.** *See* North Carolina v. Alford, 400 U. S. 25, 91 S. Ct. 160, 27 L.Ed.2d 162 (1970), which sanctions such pleas. One usually enters a guilty plea to a charge, notwithstanding protestations of innocence, in order to avoid prosecution on other charges or evade more severe penalties.

**2.** Phipps avers that he has received no therapy.

rape. Judge Cameron held that the punishment of life imprisonment for the crime of first degree rape is not unconstitutional, and he denied post conviction relief. We granted leave to appeal and transferred the case to the regular docket.

In this Court, Phipps reiterated his attack' on the constitutionality of Md. Ann. Code art. 27, § 462 (b) as applied to himself. He wove into his argument a "but for" contention which points out that absent certain highly relevant testimony the offense would have been that of second degree rape punishable by a maximum term of twenty (20) years imprisonment.

We shall deal first with the interlarded "but for." The record reveals that the victim said that Phipps demanded that she yield to his sexual advances, posed to her in rather explicit, earthy language. When she declined, he exclaimed, "Don't make me hurt the baby — don't make me have to hurt the baby." His reference was to the three (3) year old daughter of the prosecutrix who clung to her breast while the prosecutrix was ravished by Phipps.

Section 462, concerned with first degree rape, provides in pertinent part:

"(a) *What constitutes.* — A person is guilty of rape in the first degree if the person engages in vaginal intercourse with another person by force against the will and without the consent of the other person and:

(1) With another person by force or threat of force against the will and without the consent of the other person and:

. . .

(iii) Threatens or places the victim in fear that the victim *or any person known to the victim* will be imminently subjected to death, suffocation, strangulation, disfigurement, *serious physical injury* . . . ." [3] (Emphasis supplied.)

---

**3.** Section 462 was amended by 1977 Md. Laws, ch. 2920. Subsection (iii) is now subsection (3). There were no substantive changes.

The gravamen of the offense in the instant case is the very threat that Phipps would like to read out of the record so as to reduce the charge to second degree rape. The implied threat of Phipps to harm his victim's infant child is what caused her to submit to him and is the very element which placed the sexual attack within the ambit of Section 462 (a) (1) (iii). Moreover, the victim testified that to her the threat meant that Phipps was going to "Beat us. Kill us. I didn't ask." [4]

In *Crenshaw v. State,* 13 Md. App. 361, 373, 283 A. 2d 423, 430 (1971), *cert. denied,* 264 Md. 746 (1972), we held that a mother's instinct for the safety of her child together with her rapist's threats to harm the child if the victim did not surrender to his illicit sexual advances constituted force and coercion. *Crenshaw* was decided under a prior statute relative to rape. What we said in *Crenshaw,* however, applies to the later Article 27, § 462 (a) (1) (iii).

The appellant's "but for" contention is the same as arguing that "but for" the negative tone of the Ten Commandments all the acts therein condemned would be permissible. The fact remains that the acts forbidden by the Ten Commandments are not sanctioned. No amount of "supposing" or analyzing of hypothetical evidence will eradicate the positive testimony of the victim and reduce the offense to anything other than that to which the appellant pled guilty.

Phipps's constitutional assault on the Maryland statute commences with the Eighth Amendment which proscribes "cruel and unusual punishments." That prohibition is, of course, applicable to the States as well as to the federal government. *Coker v. Georgia,* 433 U. S. 584, 97 S. Ct. 2861, 53 L.Ed.2d 982 (1977); *Robinson v. California,* 370 U. S. 660, 82 S. Ct. 1417, 8 L.Ed.2d 758 (1962); *Bigley v. Warden,* 16 Md.

---

4. There was additional evidence from the prosecutrix that the appellant told her that he "had been involved in many incidents in the past in which drinking was involved in which there was some fighting and so forth, but never this kind of behavior. There was no history of in particular sexual deviations or that sort of thing."

App. 1, 294 A. 2d 141 (1972). A similar proscription is included in the Maryland Declaration of Rights, Articles 16 [5] and 25.[6]

The historical background of the phrase "cruel and unusual punishment" was discussed by the Supreme Court of the United States in *Gregg v. Georgia,* 428 U. S. 153, 169-71, 96 S. Ct. 2909, 2923-24, 49 L.Ed.2d 859, 872-73 (1976). The Court said:

> "The phrase first appeared in the English Bill of Rights of 1689, which was drafted by Parliament at the accession of William and Mary. See Granucci, 'Nor Cruel and Unusual Punishments Inflicted: ' The Original Meaning, 57 Calif. L. Rev. 839, 852-853 (1969). The English version appears to have been directed against punishments unauthorized by statute and beyond the jurisdiction of the sentencing court, as well as those disproportionate to the offense involved. *Id.,* at 860. The American draftsmen, [7] who adopted the English phrasing in drafting the Eighth Amendment, were primarily concerned, however, with proscribing 'tortures' and other 'barbarous' methods of punishment.' [*sic*] *Id.,* at 842. [Footnote omitted.]
>
> . . .
>
> But the Court has not confined the prohibition embodied in the Eighth Amendment to 'barbarous' methods that were generally outlawed in the 18th century. Instead, the Amendment has been interpreted in a flexible and dynamic manner. The

---

5. Article 16 provides:

> "That sanguinary Laws ought to be avoided as far as it is consistent with the safety of the State; and no Law to inflict cruel and unusual pains and penalties ought to be made in any case, or at any time, hereafter."

6. Article 25 states in slightly different language:

> "That excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law."

7. The "American draftsman" was Representative (later President of the United States) James Madison. *See* Bernard Schwartz, *The American Heritage History of the Law in America,* ch. II (1974). *See also* Baker v. State, 39 Md. App. 133, 383 A. 2d 698 (1978).

Court early recognized that 'a principle to be vital must be capable of wider application than the mischief which gave it birth.' *Weems v. United States,* 217 U. S. 349, 373 [30 S. Ct. 544, 551, 54 L. Ed. 793, 801] (1910). Thus the Clause forbidding 'cruel and unusual' punishments 'is not fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by a humane justice.' *Id.,* at 378 [30 S. Ct. at 553, 54 L. Ed. at 803]. See also *Furman v. Georgia,* 408 U. S., at 429-430 [92 S. Ct. at 2823-24, 33 L.Ed.2d at 459-60] (Powell, J., dissenting); *Trop v. Dulles,* 356 U. S. 86, 100-101 [78 S. Ct. 590, 597-98, 2 L.Ed.2d 630, 642-43] (1958) (plurality opinion)."

Subsequently, the Court, in *Coker v. Georgia,* 433 U. S. at 592, 97 S. Ct. at 2865, 53 L.Ed.2d at 989, opined:

"[T]he Eighth Amendment bars not only those punishments that are 'barbaric' but also those that are 'excessive' in relation to the crime committed. Under Gregg, a punishment is 'excessive' and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. A punishment might fail the test on either ground."

The Court, speaking through Mr. Justice White, went on to say that the evaluation of a sentence must be based on objective factors, rather than the subjective views of individual judges. *Id.*

Public attitudes, reflected by the legislative determination of punishment of a particular criminal offense, are also a material consideration in the court's function of ascertaining whether a punishment is condemned to crossing the River Styx into constitutionally mandated oblivion.

"To this end, attention must be given to the public attitudes concerning a particular sentence — history

and precedent, legislative attitudes, and the response of juries reflected in their sentencing decisions are to be consulted." *Id.* at 592, 97 S. Ct. at 2866, 53 L.Ed.2d at 989.

The statute under attack in the case *sub judice* is but one part of the General Assembly's recognition of the existence of different degrees of rape with prescribed corresponding punishment.

The validity of legislatively determined punishment is presumed, *Gregg v. Georgia,* 428 U. S. at 175, 96 S. Ct. at 2926, 49 L.Ed.2d at 876, and courts "may not require" that "a democratically elected legislature" enact the least severe possible penalty as the sanction for a crime. As long as the punishment that is decreed conforms "with the basic concept of human dignity," 428 U. S. at 182, 96 S. Ct. at 2929, 49 L.Ed.2d at 880, and is neither "cruelly inhumane [n]or disproportionate," 428 U. S. at 175, 96 S. Ct. at 2926, 49 L.Ed.2d at 876, to the offense, there is no violation of the Eighth Amendment, *Gregg v. Georgia, supra,* nor of the Maryland Declaration of Rights, Articles 16 and 25.

When the judgment of the people, handed down through their duly elected State Senators and Delegates in the form of a statute, is subjected to assault, a "heavy burden" is borne by the attacker. *Gregg v. Georgia,* 428 U. S. at 175, 96 S. Ct. at 2926, 49 L.Ed.2d at 876.

Mr. Justice Stewart penned in *Gregg v. Georgia,* 428 U. S. at 175-76, 96 S. Ct. at 2926, 49 L.Ed.2d at 876:

> "This is true in part because the constitutional test is intertwined with an assessment of contemporary standards and the legislative judgment weighs heavily in ascertaining such standards. '[I]n a democratic society legislatures, not courts, are constituted to respond to the will and consequently the moral values of the people.' *Furman v. Georgia* ... [408 U. S. at 383, 92 S. Ct. at 2800-01, 33 L.Ed.2d at 432 (1972)] (Burger, C. J., dissenting). The deference we owe to the decisions of the state legislatures under our federal system, *id.,* at 465-470

[92 S. Ct. at 2841-44, 33 L.Ed.2d at 480-83] (Rehnquist, J., dissenting), is enhanced where the specification of punishments is concerned, for 'these are peculiarly questions of legislative policy.' *Gore v. United States,* 357 U. S. 386, 393 [78 S. Ct. 1280, 1284-85, 2 L.Ed.2d 1405, 1410] (1958). *Cf. Robinson v. California,* 370 U. S., at 664-665 [82 S. Ct. at 1419-20, 8 L.Ed.2d at 758 (1962)]; *Trop v. Dulles,* 356 U. S., at 103 [78 S. Ct. at 599, 2 L.Ed.2d at 643-44 (1958)] (plurality opinion); *In re Kemmler,* 136 U. S., at 447 [10 S. Ct. at 938, 34 L. Ed. at 524 (1880)]. Caution is necessary lest this Court become, 'under the aegis of the Cruel and Unusual Punishment Clause, the ultimate arbiter of the standards of criminal responsibility . . . throughout the country.' *Powell v. Texas,* 392 U. S. 514, 533 [88 S. Ct. 2145, 2154-55, 20 L.Ed.2d 1245, 1267-68] (1968). A decision that a given punishment is impermissible under the Eighth Amendment cannot be reversed short of a constitutional amendment. The ability of the people to express their preference through the normal democratic processes, as well as through ballot referenda, is shut off. Revisions cannot be made in the light of further experience. See *Furman v. Georgia, supra,* at 461-462 [92 S. Ct. at 2839-40, 33 L.Ed.2d at 477-78] (Powell, J., dissenting).

Phipps avers that he "is serving an unconstitutional and excessive sentence based on the two-pronged test applied in *Coker* [*v. Georgia, supra*]." We have an entirely different view.

We think that a sentence of life imprisonment for the crime of first degree rape is a "reasonable contribution to acceptable goals of punishment." [8] The life sentence may only

---

8. A review of the Codes of several States indicates that a life sentence is permissible in twenty-five (25) of them and the District of Columbia, including: Alabama, 1977 Ala. Acts No. 607, § 2310(2) punishable under § 1225(1)(a); Arizona, Ariz. Rev. Stat. § 13-614; Arkansas, Ark. Stat. Ann. § 41-1803 punishable under § 41-901; District of Columbia, D.C. Code § 22-2801; Florida, Fla. Stat. Ann. § 794.011 (West); Idaho, Idaho Code § 18-6104; Illinois, Ill. Ann. Stat. Ch. 38, § 11-1c punishable under Ch. 38,

be imposed when an accused has been found guilty of employing the most reprehensible of methods in carrying out the heinous offense of vaginal intercourse against his victim's will. Those most reprehensible methods include 1) the use of a dangerous or deadly weapon, or an article believed by the victim to be such a weapon; 2) serious physical injury which could result in the death of the victim; 3) threats of imminent injury to the victim or persons known (and obviously connected by a bond of affection) to the victim; and 4) when the accused is aided by another person in the rape of the victim. Md. Ann. Code art. 27, § 462.

When the basic elements of imminent peril to the life of the victim or her loved ones is removed or there is no third-person aider or abetter in the crime, it is reduced in seriousness and in punishment to a maximum of twenty (20) years imprisonment. Md. Ann. Code art. 27, § 463.

The legislatively mandated penalty of confinement "for not more than the period of his natural life" represents the will of the people of Maryland that its female citizens be protected in their persons from violation. Recognizing that mere words, printed in a Code of Criminal Laws, will not, in and of themselves, cause a cessation of rape any more than the Ten Commandments have halted sin, the General Assembly has determined that those who so violate the victim, also violate § 462. While " '[r]etribution is no longer the dominant objective of the criminal law,' *Williams v. New York,* 337 U.S. 241, 248 [69 S. Ct. 1079, 1084, 93 L. Ed. 1337, 1343] (1949)," it is neither "a forbidden objective nor one inconsistent with

§ 1005-8-1 (Smith-Hurd); Iowa, Iowa Code Ann. § 902.1 et seq. (West); Kentucky, Ky. Rev. Stat. § 510.040(2) punishable under § 532.060(2)(a); Louisiana, La. Rev. Stat. Ann. § 14:42 (West); Massachusetts, Mass. Ann. Laws ch. 265, § 22 (Michie/Law. Co-op); Michigan, Mich. Comp. Laws Ann. § 750.520b; Mississippi, Miss. Code Ann. § 97-3-65(1) and § 97-3-65(2); Missouri, Mo. Rev. Stat. § 559.260; Nevada, 1977 Nev. Laws ch. 598, § 3; New Mexico, N.M. Stat. Ann. § 40A-9-21A punishable under § 40A-29-3A; North Carolina, N.C. Gen. Stat. § 14-21(1) and § 14-21(2); Ohio, Ohio Rev. Code Ann. § 2907.02(B) (Anderson); Oklahoma, Okla. Stat. tit. 21, § 1115; Rhode Island, R.I. Gen. Laws § 11-37-1; Tennessee, Tenn. Code Ann. § 39-3702; Texas, Tex. Penal Code Ann. tit. 5, § 2103 (Vernon); Utah, Utah Code Ann. § 76-53-18(a); Virginia, Va. Code § 18.2-61; Washington, Wash. Rev. Code Ann. § 9.79.170(2); Wyoming, Wyo. Stat. § 6-63(A).

our respect for the dignity of men." *Gregg v. Georgia,* 428 U. S. at 183, 96 S. Ct. at 2930, 49 L.Ed.2d at 880.

Paraphrasing Mr. Justice Stewart in *Gregg,* the General Assembly articulated the will of the people of Maryland that life imprisonment is the appropriate *peine forte et dure* [9] for the grievous affront to its feminine populace.

We hold that the imposition of a life sentence for a violation of Md. Ann. Code art. 27, § 462, rape in the first degree, is constitutionally permissible.

> *Judgment affirmed.*
> *Costs to be paid by appellant.*

---

9. "strong and severe punishment."