280 S.E.2d 62 (1980)
STATE ex rel. Robert Meade LEACH
v.
The Honorable John M. HAMILTON, Judge, etc.
No. 14949.
Supreme Court of Appeals of West Virginia.
October 28, 1980.
Rehearing Denied February 13, 1981.
Askin & Burke and Steven M. Askin, Martinsburg, for relator.
Chauncey H. Browning, Atty. Gen., S. Clark Woodroe, Asst. Atty. Gen., Charleston, for respondent.
HARSHBARGER, Justice:
Robert M. Leach seeks to prohibit Circuit Court Judge John M. Hamilton of Hardy County from trying him for murder. His reasons are that a single trial enforcing W.Va. Code, 62-3-15, violates his state and federal constitutional rights to due process and equal protection by failing to provide standards for the jury's choice to grant mercy, and contravenes his constitutional protections against self-incrimination and cruel and unusual punishment; and that there should be a trial to determine guilt, and if he is found guilty, another to decide his sentence.
In relevant part, Code, 62-3-15, states:
If the person indicted for murder is found by the jury guilty thereof, and if the jury find in their verdict that he is guilty of murder of the first degree, or if a person indicted for murder pleads guilty of murder of the first degree, he shall be punished by confinement in the penitentiary for life, and he, notwithstanding the provisions of article twelve [§ 62-12-1 et seq.], chapter sixty-two of this Code, shall not be eligible for parole: Provided, that the jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole in accordance with the provisions of said article twelve .... (Emphasis added.)
The United States Supreme Court has held several state death penalty statutes unconstitutional because they failed to guide jury discretion about imposition of the penalty. Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), reh. denied, 429 U.S. 890, 97 S.Ct. 248, 50 L.Ed.2d 173; Furman *63 v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). See also Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Profitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).
These opinions emphasize that a statute that provides for a mandatory death sentence is unconstitutional because it allows no jury discretion about the punishment. Woodson, supra. Individualized sentencing is required. Chief Justice Burger wrote in Lockett v. Ohio, supra 98 S.Ct., at 2965:
We recognize that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands but public policy enacted into statutes. The considerations that account for the wide acceptance of individualization of sentences in noncapital cases surely cannot be thought less important in capital cases. Given that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases. The need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases. A variety of flexible techniques-probation, parole, work furloughs, to name a few-and various post conviction remedies, may be available to modify an initial sentence of confinement in noncapital cases. The nonavailability of corrective or modifying mechanisms with respect to an executed capital sentence underscores the need for individualized consideration as a constitutional requirement in imposing the death sentence.13 (Emphasis added.)
13 Sentencing in noncapital cases presents no comparable problems. We emphasize that in dealing with standards for imposition of the death sentence we intimate no view regarding the authority of a State or of the Congress to fix mandatory, minimum sentences for noncapital crimes.
That Court expanded upon Lockett's footnote 13, supra, and held that mandatory life sentences in noncapital cases do not violate the Constitution. Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). A life sentence, with or without possibility of parole, is not a cruel and unusual punishment unless so disproportionate to the offense as to shock the general conscience or degrade human dignity. Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910).
Rummel held that a mandatory life sentence imposed under Texas' recidivist statute following defendant's third felony conviction did not constitute cruel and unusual punishment, (although each of defendant's three felonies were thefts of amounts of money less than $125.00)! Other states have held that life sentences do not constitute cruel and unusual punishment for murder or under habitual offender statutes. State v. Farrow, 118 N.H. 296, 386 A.2d 808 (1978); State v. Spence, Del., 367 A.2d 983 (1976); Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975); State v. Forrester, 21 Wash.App. 855, 587 P.2d 179 (1978); State v. Cook, La., 345 So.2d 29 (1977); Wilson v. State, 268 Ind. 112, 374 N.E.2d 45 (1978); Dyas v. State, 260 Ark. 303, 539 S.W.2d 251 (1976); People v. Isitt, 55 Cal.App.3d 23, 127 Cal.Rptr. 279 (1976); Edwards v. Commonwealth, Ky., 500 S.W.2d 396 (1973); People v. Hall, 396 Mich. 650, 242 N.W.2d 377 (1976); State v. Parle, 110 Ariz. 517, 521 P.2d 604, cert. denied, 419 U.S. 1003, 95 S.Ct. 324, 42 L.Ed.2d 279 (1974); People v. Gardner, 56 Cal.App.3d 91, 128 Cal.Rptr. 101 (1976). Cf. Jones v. State, Ind., 385 N.E.2d 426 (1979), and State v. Brooks, La., 350 So.2d 1174 (1977) (life sentence not cruel and unusual punishment for second-degree murder); State v. Watson, 294 N.C. 159, 240 S.E.2d 440 (1978), and Mydell v. State, 238 Ga. 450, 233 S.E.2d 199 (1977) (life sentence for armed robbery does not constitute cruel and unusual punishment); Phipps v. State, 39 Md.App. 206, 385 A.2d 90 (life sentence for first-degree rape not cruel and unusual punishment); Parker v. State, 265 Ind. 595, 358 N.E.2d 110 (1976) (life sentence for kidnapping not cruel and *64 unusual punishment). See generally 33 A.L.R.3d 335, (1970 and Supp.). The few cases in which life imprisonment sentences were held unconstitutional as cruel and unusual punishment involved youthful offenders, People v. LaPointe, 85 Ill.App.3d 215, 41 Ill.Dec. 4, 407 N.E.2d 196 (1980); Workman v. Commonwealth, Ky., 429 S.W.2d 374, 33 A.L.R.3d 326 (1968); or habitual offenders who committed nonviolent crimes, Hart v. Coiner, 483 F.2d 136 (4th Cir.), cert. denied, 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974), impliedly overruled by Rummel, supra. In State v. Vance, W.Va., 262 S.E.2d 423 (1980), we discussed the cruel and unusual punishment provision of our state constitution in a recidivist context.
Although life imprisonment without eligibility for parole is the severest penalty in West Virginia, first-degree murder is a most heinous crime. Life imprisonment without possibility of parole is not cruel and unusual punishment for that crime. U.S. Const. amends. XIV and VIII; W.Va.Const. art. III, § 5. W.Va. Code, 61-2-1, and those portions of Code, 62-3-15, that relate to jury verdicts of guilty of first-degree murder and punishment of life imprisonment without eligibility for parole, or with recommendation of mercy which permits eligibility for parole, do not violate a defendant's constitutional right to freedom from cruel and unusual punishment.
The West Virginia first-degree murder statute leaves very little sentencing discretion to juries. A finding of guilt automatically results in a life sentence and a jury's only discretion is whether to grant parole eligibility by recommending mercy. The factors that a jury should consider in deciding whether to recommend mercy are not delineated, but these are for legislative determination. The Supreme Court of Indiana said in Wilson v. State, supra 374 N.E.2d, at 50:
Appellant further argues that the jury was not provided with adequate guidelines to choose between a life sentence and a lesser sentence .... He argues that the lack of guidelines makes the jury's choice of the greater sentence cruel and unusual punishment under the concept of Furman v. Georgia, (1972) 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. Appellant does not demonstrate that Furman, which dealt with the death penalty, applies to sentences of imprisonment for murder as are involved in this case. Neither is it demonstrated that Furman stands for any constitutional mandate of "guidelines" for use by the jury any time the sentencing function is undertaken. We do not believe that Furman so applies, and find this argument to be without merit.
See State v. Smith, 267 S.C. 527, 229 S.E.2d 851 (1976).
Code, 62-3-15, is not unconstitutional because it permits a single trial procedure, rather than a bifurcated one. Identical challenges to our rape statute, which was similarly worded, were defeated in State ex rel. Rasnake v. Narick, W.Va., 227 S.E.2d 203 (1976),[1] and the United States Supreme Court has also rejected the argument. McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), reh. denied, 406 U.S. 978, 92 S.Ct. 2407, 32 L.Ed.2d 677; Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), reh. denied, 386 U.S. 969, 87 S.Ct. 1015, 18 L.Ed.2d 125 (1967). (This aspect of McGautha was not overruled in Furman.)
To say that the two-stage jury trial in the English-Connecticut style is probably the fairest, as some commentators and courts have suggested, and with which we might well agree were the matter before us in a legislative or rule-making context, is a far cry from a constitutional determination that this method of handling the problem is compelled by the Fourteenth Amendment. Two-part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure. (Footnotes *65 omitted.) Spencer v. Texas, 385 U.S., at 567-68, 87 S.Ct., at 655-56.
Since this court's decision in Rasnake that a unitary trial procedure is constitutional, we decided State v. McAboy, W.Va., 236 S.E.2d 431 (1977). The McAboy rule that a defendant's credibility cannot be impeached by prior convictions other than for perjury or false swearing, unless he tries to prove his good character and reputation, did not affect Rasnake.
It is often wise for a defendant to attempt to convince a jury to be moderate in judgment of him, and he may prove previous good character or other circumstances calculated to soften jurors' perceptions about the degree of his culpability; but that is a tactical choice. A defendant may opt not to testify; he may testify, and not put his character in issue. If he feels that introduction of evidence of prior convictions, invited when his good character is proved, would be prejudicial to the guilt decision, we can envision no instances in which he would not also be hesitant to introduce character evidence in a second stage bifurcated hearing on punishment. Undoubtedly, a jury would be less likely to grant mercy to a defendant with prior convictions, for example, than to one who has no criminal record.
Other factors that a jury might consider in granting mercy-defendant's age, mental state, defenses, family responsibilities, the nature of the offense and circumstances surrounding the crime-will be made available to a jury in the guilt-or-innocence trial. Failure to have bifurcated proceedings simply affects an option a defendant has-which is an absolute legal entitlement if he chooses it-to put the state to its proof and present little or no defense, upon tactical judgment that the government's weakness would ultimately be fatal. The strategy may be, but only rarely in our experience, a good one. We cannot envision a murder defense, however, that would not require introduction of all possible evidence toward reduction of a jury's view of the severity of defendant's acts. Even when alibi is a defense, good character evidence would be appropriate.
And so we cannot conceive of any fact that defendant could introduce to convince a jury that he deserves mercy at a separate sentencing stage, that should not be introduced by him at the main trial, and Leach presents us with none. A criminal defense attorney might be ineffective if he failed to present advantageous evidence that could affect a jury's verdict about degree of guilt. If defendant chose to try to mitigate his punishment by introducing character evidence, he would, of course, be entitled to an instruction that evidence of prior convictions may not be considered in his guilt or innocence determination.[2]
A bifurcated proceeding may be preferable (although we think not); but it is not constitutionally imperative. A unitary jury trial under W.Va.Code, 62-3-15, is constitutional.
Writ denied.
NEELY, Chief Justice, dissenting:
I respectfully dissent to syl. pt. 2 for the reasons set forth in Justice Wilson's and my dissent in State ex rel. Rasnake v. Narick, W.Va., 227 S.E.2d 203, at 207 (1976).
NOTES
[1] We declined to decide the issue again in Moore v. McKenzie, W.Va., 236 S.E.2d 342 (1977), because it was moot, but noted that we might consider it in an appropriate case.
[2] A single proceeding may well benefit a defendant. In a bifurcated proceeding, the prosecution may present evidence of aggravating factors which were inadmissible at the guilt stage. See for example, Justus v. Commonwealth, 220 Va. 971, 266 S.E.2d 87 (1980), where gruesome color photographs of the victim, inadmissible at trial stage, were admissible to prove aggravating circumstances at the sentencing stage of a bifurcated proceeding under Virginia statute, Code, 1950, § 19.2-264.4, subd. C.