EDWARDS *v.* THE STATE.

No. 16342. OCTOBER 13, 1948.

386

*Grayson C. Powell,* and *George L. Smith II,* for plaintiff in error.

*Eugene Cook, Attorney-General, W. H. Lanier, Solicitor-General, Price & Spivey,* and *Frank H. Edwards,* contra.

HEAD, Justice. The motion in this case can not be construed as an application for continuance based on the absence of a material witness, and the showing required by the Code, § 81-1410, does not apply. While the showing as made contained an insistence that the defendant was not physically able to go to trial, there was medical testimony that he was able to stand trial, and this point is not insisted upon in this court.

The attorney who was appointed to represent the defendant on the day preceding the trial, insisted in his motion that he should have opportunity to prepare for the trial of the case. The facts in this case present an unusual situation. One attorney was appointed by the court some six or seven days prior to the date of the trial. At the time of his appointment this attorney was advised by the court that other counsel would be appointed to assist him. The first attorney appointed consulted with the defendant on two occasions. From his testimony it does not appear that he made any further investigation or attempted to interview any

witnesses in preparation for a trial of the case. The inference may be fairly drawn from his testimony that he delayed further investigation pending the appointment of other counsel. Since he was out of court on a leave of absence, and did not return until the evening before the trial, a conference between the first and second attorneys appointed was not possible until a short time before court opened on the date of the trial.

The Code, § 81-1419, provides: "All applications for continuances are addressed to the sound legal discretion of the court, and, if not expressly provided for, shall be granted or refused as the ends of justice may require." Counsel for the State have cited some of the many cases in the reports of this court and of the Court of Appeals to the effect that the discretion of the trial judge will not be controlled unless manifestly abused. The cases containing this statement are so numerous, and this principle of law has been so frequently stated, that it does not require any citation of authority here. The expression, "that the discretion of the trial judge will not be controlled unless manifestly abused," however, does not mean that the trial judge has any discretion in the application of legal rules and principles to a finding of fact made by him. His discretion begins and ends with the evidence. Where the evidence is conflicting, his finding on the facts will not be set aside, unless manifestly abused. Where there is no conflict in the evidence, and only legal rules as declared by our laws, and the principles of justice stated by the Bill of Rights of the Federal and State Constitutions are to be applied, an erroneous application of such rules and principles will be reviewed and corrected.

The clear mandate of our Constitution, art. 1, sec. 1, par. 5 (Code, Ann., § 2-105), requires that every person accused of crime shall have the "benefit of counsel." If, in order to comply with this mandate of the Constitution, it was necessary to name a second attorney to represent the accused, then on application of the same principle enunciated by this provision of the Constitution, counsel should have an opportunity to investigate the case and prepare their defense of the accused.

In *Brown* v. *State*, 120 *Ga.* 145, 147 (47 S. E. 543), it was stated: "The Constitution of this State provides that every person accused of crime shall have the privilege and benefit of coun-

sel . . but it is useless to appoint counsel to represent one so accused unless the attorney so appointed is given at least a reasonable opportunity to prepare the case entrusted to him."

What preparation could the attorney Smith have made more than to confer with the defendant and the other attorney under the circumstances set forth? How many of the more than twenty witnesses for the State whose names appeared on the bill of indictment could he have located and interviewed? What facts could he have ascertained in support of his statement to the court that it was his opinion that the defendant might properly file a plea of insanity?

In *Reliford* v. *State*, 140 *Ga.* 778 (79 S. E. 1128), it was said: "This constitutional guaranty of 'benefit of counsel' means something more than the mere appointment by the court of counsel to represent the accused. He is entitled to a reasonable time for preparation by such counsel to properly represent him on the trial." And in *Blackman* v. *State*, 76 *Ga.* 289, it was said: "This constitutional privilege would amount to nothing if the counsel for the accused are not allowed sufficient time to prepare his defense." See also *Jones* v. *State*, 65 *Ga.* 506; *Jackson* v. *State*, 88 *Ga.* 784 (15 S. E. 677); *McArver* v. *State*, 114 *Ga.* 514 (40 S. E. 779); *Cummings* v. *State*, 151 *Ga.* 593 (107 S. E. 771); *Sheppard* v. *State*, 165 *Ga.* 460 (141 S. E. 196).

In this case it appears that the defendant was a resident of the State of Kentucky; that his father was dead; that his mother died in an insane asylum while the defendant was serving in the Army of the United States; that he has two brothers serving in the Army, one in California, and the other's location being unknown. The brother in California visited the defendant for a short time about a week or ten days prior to the trial, and then went to another State in an effort to procure funds to hire counsel for the defendant. This brother returned the day before the trial. Thus it appears that the defendant was in a strange State, out of touch with friends or acquaintances, and without resources to employ counsel.

If it should be assumed that the defendant is guilty of murder, without any mitigating facts or circumstances, he is still entitled to have his appointed counsel given an opportunity to prepare for trial with some knowledge of what the evidence would show.

In *Harris* v. *State*, 119 *Ga.* 114 (45 S. E. 973), it was said: "Undue haste in the administration of the criminal law is as much to be condemned as unnecessary delay. The true course lies between these two extremes."

If there should be those so unduly concerned because the defendant has not been brought to account for his alleged crimes as to complain of the law's delay, our answer must be that undue haste, amounting to a denial of the benefit of counsel, requires that the defendant's constitutional right of counsel be given him, regardless of the evidence against him. This fundamental right is guaranteed to every person charged with crime.

Since the defendant must be granted a new trial, the general grounds of his motion for a new trial are not ruled upon. Other grounds of the amended motion deal with matters that should not occur on a second trial of the case, and do not require any ruling thereon. Let the judgment be

*Reversed. All the Justices concur, except Atkinson, P. J., and Candler, J., who dissent, and Bell, J., absent on account of illness.*