McLENDON *v.* THE STATE.

No. 16497.  FEBRUARY 16, 1949.  REHEARING DENIED MARCH 16, 1949.

58

*Samuel E. Tyson* and *Randall Evans Jr.*, for plaintiff in error.
*Eugene Cook, Attorney-General, George Hains, Solicitor-General, Rubye G. Jackson,* and *Frank H. Edwards,* contra.

WYATT, Justice. ■ There is no merit in the general grounds of the motion for new trial. The State's evidence abundantly proved every element of the crime of murder.

■ The first special ground assigns error on the failure of the trial judge to grant a continuance. On the call of the case, the following occured:

Counsel for the accused: "We would like to make a motion for a continuance in this case. . . There is a considerable amount of evidence which counsel for the accused has been diligently trying to obtain. . . I have had this case now for about two and a half weeks. I haven't done anything except work on this one case. Of course, Your Honor understands that I am a young member of the bar and I am not, possibly, as experienced enough to get out and prepare evidence as some older attorney. . . I would like to point out that there are many witnesses involved in the case, both of the accused and the deceased's families. It has been impossible to even talk rationally with them, members of either families, to find out whether I could obtain anything to help in the defense of this case because of the great emotions existing at this time on both sides of the case. Counsel has endeavored to make approaches to both families in the case and can not discuss it with them. This lady has not been dead long enough for anybody to get over it and there is a considerable amount of evidence which counsel thinks will be available to him if he has time to investigate the case. I wish to point out to the court that the accused has nothing. He is not able to pay other counsel. I tried to secure the services of other counsel. Counsel would also like to bring before

the court the fact that we have had the accused examined by two competent psychiatrists, both of whom are present in court at the present time. Both of these doctors state that they can make no conclusive determination of the sanity of the accused unless he was given laboratory tests and that he be sent to some place where these tests can be made. . . The doctors state they can not determine whether he is insane or sane, conclusively, under the adverse circumstances, with a deputy sheriff standing there in the jail. . . This motion is not made for the purpose of delay; it is made for the purpose of doing what is fair and just about the thing and in all fairness and justice he should be given these examinations and both doctors will bear out that statement."

The Solicitor-General: "We have doctors to show to the contrary."

The Court: "It is a question for the jury."

Counsel for the accused: "We have to substantiate the plea by evidence. We do not have the evidence available to substantiate the plea for the simple reason we haven't had the man where we could put these laboratory tests to him. The only way we could get any evidence for a jury to go on would be by having the doctors examine him."

The Court: "Upon an application I would have ordered that the doctors be given an opportunity to examine him, but I have had no such application until today. I overrule the motion."

It will be noted that the motion for continuance is planted mainly upon the following propositions: (a) counsel was young and inexperienced and had been unable to secure other counsel to assist him; (b) the preparation of the defense was difficult, and a sufficient time had not elapsed to permit rational conversation with the families of the accused and the deceased; (c) counsel, from his association with the accused, had reason to doubt his sanity; (d) two psychiatrists had examined the accused, but were unable to determine conclusively the question of his sanity without making laboratory tests, and such tests could not be made in jail where the accused had been incarcerated.

The Code, § 81-1419, provides: "All applications for continuance shall be addressed to the sound legal discretion of the court, and, if not expressly provided for, shall be granted or re-

fused as the ends of justice may require." This court has repeatedly ruled that the refusal of a motion to continue will not be reversed unless it is manifest that there has been an abuse of discretion on the part of the trial judge. Illustrative of such rulings is *Harris* v. *State*, 119 *Ga.* 114 (45 S. E. 973), where it was held: "In order for this court to control the discretion of the trial judge in refusing to grant a motion for the postponement of a criminal case to allow counsel to prepare for trial, it is necessary that it should appear that a gross mistake has been made by the trial judge, or that he has displayed a want of consideration for the rights of the accused."

In this case it appears that the homicide occurred on June 13, 1948. The indictment was returned on June 21, 1948, and nearly a month later, on July 19, 1948, the case was called for trial. For at least two and one-half weeks prior to the trial, an attorney employed by the accused had spent his entire time in the preparation of the case for trial.

Counsel for the plaintiff in error cite and rely on *Saylor* v. *State*, 183 *Ga.* 440 (188 S. E. 514), where, with two justices dissenting, it was held that the trial judge abused his discretion in refusing to allow a continuance. The facts in that case are so materially different from those in the present case that we think it in no way controlling or persuasive. In that case an indictment was returned on November 25, 1935, and the case was called for trial on the following day. Some ten days before the call of the case, two attorneys had been appointed by the court to represent the accused, but they had been engaged in other matters up to the day the case was called for trial. Prior to the day of the trial, counsel had endeavored to secure the attendance on the trial of a psychiatrist and a physician at the Milledgeville State Hospital for the insane, where the accused had been confined and under observation until several months preceding the homicide, when he had escaped. Counsel had applied to the trial judge for subpœnas for these witnesses, and this request had been refused. This case is also distinguishable from *Edwards* v. *State*, 204 *Ga.* 360 (50 S. E. 2d, 10).

On more than one occasion this court has held that the allowance of only approximately twenty-four hours for appointed counsel to prepare for trial in a murder case did not show an

abuse of discretion. In *Cannady* v. *State,* 190 *Ga.* 227 (9 S. E. 2d, 241), appointed counsel based a motion for continuance on the contention that they had been given barely twenty-four hours to prepare for trial, which, it was contended, was insufficient time in which to inquire into the mental condition of their client or otherwise prepare his defense, they having been engaged in other matters while in attendance on court. In a full-bench decision, this court held that the trial judge did not abuse his discretion in denying the motion for continuance.

In the instant case, there was no intricate question of law or fact involved, unless the possible defense of insanity might be termed intricate. The case did not rest upon circumstantial evidence. With reference to the question of insanity, it appeared that employed counsel had had the accused examined by psychiatrists, and counsel's own statement indicates that he had never met with any difficulty in having his client examined by experts, except that counsel indicated that the examinations were not satisfactory because an officer was present and laboratory tests were needed. But, whether the examinations were satisfactory or not, no attempt was ever made to secure a more extensive examination of the accused. The first intimation, so far as the record shows, that such an examination was desired was on the call of the case. Such an intimation, we think, might well have been voiced prior to the call of the case. The trial judge could have granted a request then just as well as on the call of the case; indeed, he stated emphatically that he would have done so had a request been presented to him.

Under the circumstances disclosed by the record, it is our opinion that the trial judge did not abuse his discretion in overruling the motion for a continuance.

█ The second special ground assigns error on the following portion of the charge: "Now, where the issue of insanity is involved, the burden is on the defendant to show to the reasonable satisfaction of the jury that at the time of the alleged commission of the act charged against him he was insane." It is contended that the burden placed upon the accused to establish his insanity "to the reasonable satisfaction of the jury" required a higher degree of proof and placed upon him a greater burden than the law requires, it being insisted that the court

should have charged the jury that insanity could be proved by a preponderance of the evidence.

There is no necessity of an extended discussion upon this question. A charge, in exactly the same language here complained of, was considered by this court in *Carroll* v. *State*, 204 *Ga.* 510 (50 S. E. 2d, 330), and, as against the same contentions here made, it was held that the charge was not erroneous. That decision is controlling on the questions here raised.

■ It is alleged in the third special ground: "Movant contends the court erred in failing, even without a request, to charge the jury on manslaughter in said case. . . In his unsworn statement, defendant gave the following account of the homicide, after describing his going to a doctor's office to see his wife: 'There is a desk sitting approximately, I would say, four to five feet from the screen door. Her pocketbook was sitting on there. She started for the pocketbook and I went crazy. I lost my mind.' Just before the above account was given, defendant said that his wife and he had the following conversation: Defendant: 'Baby, let me talk with you, please.' Deceased: 'No, I'll fix you right now.' And after which the deceased started for her pocketbook and then she was shot and killed. . . After the defendant had made the statement in his own defense quoted in this ground of motion for new trial, the State introduced a rebuttal witness . . for the purpose of showing that the deceased did not have a weapon in the pocketbook which defendant said she was trying to get hold of when she was killed." It is insisted that the law of manslaughter is involved because of the threat against the accused, the effort of the deceased to get her pocketbook, the statement of the accused that he went crazy, and the rebuttal evidence offered by the State.

This ground of the motion for new trial is too vague and indefinite to raise any question for determination. "It fails to point out whether the court should have charged on the subject of voluntary or involuntary manslaughter." *Miles* v. *State*, 182 *Ga.* 75 (4) (185 S. E. 286). See also *Armstrong* v. *State*, 181 *Ga.* 538 (3) (183 S. E. 67); *Knight* v. *State*, 148 *Ga.* 40 (3) (95 S. E. 679); *Weaver* v. *State*, 199 *Ga.* 267 (1) (34 S. E. 2d, 163). "When the court below was called upon to pass on the

motion for new trial in this case, it was entitled to have pointed out, in the exceptions to its charge for the omission therein of the law of . . manslaughter, the particular branch or branches of that law which it was error to omit; and in the absence of exceptions in the motion sufficiently definite and specific to show and point out the error complained of, this court can not and will not hold that the overruling of the motion was erroneous." *Smith* v. *State,* 125 *Ga.* 300 (54 S. E. 124).

■ During the argument of the solicitor-general, he stated to the jury: "If you give the defendant a life sentence, his lawyers and some politicians will get him out of jail and have him walking the streets in a few years." The motion for new trial recites that during this argument relatives of the deceased, who were sitting near the jury, were visibly weeping. Counsel for the accused, following this argument, stated to the court: "Your Honor, if the relatives of the deceased continue to demonstrate, and if the solicitor insists upon pursuing this kind of argument which is inflammatory, I will be forced to move for a mistrial." The court stated to the relatives that they had a right to be in the courtroom, but that they must compose themselves or retire. The solicitor-general continued, pointing his finger at the accused: "You did not have the guts to shoot at a man, but you shot this poor defenseless woman in the back, and she was helpless to defend herself; you were not content to shoot her down, but now you come into this court and try to blacken her charater and insinuate that she was having relations with another man." Then addressing the jury, the solicitor-general stated that, if they "brought in a verdict of recommendation of mercy, that would in effect be turning the defendant loose in a few years." Counsel for the accused moved for a mistrial because of prejudicial and inflammatory argument by the solicitor-general. The court cautioned the solicitor-general to confine his argument to the evidence and the reasonable deductions therefrom, and then overruled the motion for a mistrial.

Remarks similar to those made in the present case have been the subject of review by this court in a number of cases. In *Ozburn* v. *State,* 87 *Ga.* 173 (5) (13 S. E. 247), it was intimated that such argument is improper; but later, in *Lucas* v. *State,* 146 *Ga.* 315 (7) (91 S. E. 72), it was held that, in view of the broad

discretion of the jury in recommending or failing to recommend mercy, "it is not improper to allow counsel to refer to the possibility of the accused, at some future time, being pardoned by the Governor if he should be recommended to mercy by the jury."

In *Manchester* v. *State*, 171 *Ga*. 121 (7) (155 S. E. 11), this court considered the following remarks of a solicitor-general: "Gentlemen of the jury, if you recommend this defendant to mercy and he gets a life sentence, will that be any punishment? Why you know and I know that under our loose penal system in Georgia, one of the worst I have ever heard of, after he has served three years of that sentence he can apply to the Prison Commission and the Governor for a pardon or parole, and possibly get out. Our Prison Commission are politicians, the Governor is a politician; and I submit to you that a three-years' service in the penitentiary is not adequate punishment for this defendant." The trial judge declared the argument improper and "stopped the solicitor-general from further argument along that line," and refused to declare a mistrial. This court, in a full-bench decision, held that the court committed no error.

In *White* v. *State*, 177 *Ga*. 115 (5) (169 S. E. 499), it was held: "The seventh, eighth, ninth, and tenth grounds complain of a refusal to declare a mistrial on account of the following words used by the solicitor-general in his concluding argument to the jury: 'Will you permit an officer in the discharge of his duty to go out and be ruthlessly slain, and his widow come and ask for justice, his widow and child come in tears and ask for justice . . ? Do you think you can stop highway robbery and murder, such as this case, by going out and writing this kind of a verdict: We, the jury, find the defendant guilty, and recommend mercy? . . The jury has it in their power to recommend imprisonment for life. Now what does that mean? It means that after three years this defendant has a right to ask for a parole by going over with a sob sister from the interracial commission!' The judge instructed the jury not to consider the language of which complaint was made. In the circumstances the refusal to declare a mistrial is not cause for a reversal." See also *Sloan* v. *State*, 183 *Ga*. 108 (187 S. E. 670); *McRae* v. *State*, 181 *Ga*. 68 (181 S. E. 571); *Thornton* v. *State*,

190 *Ga.* 783 (10 S. E. 2d, 746) ; *Hyde* v. *State,* 196 *Ga.* 475 (26 S. E. 2d, 744).

Counsel for the plaintiff in error seek to distinguish the present case from those cited, principally upon two theories: (1) In the cited cases the court acted promptly, either ruling that the argument was improper, or rebuking the solicitor, or cautioning the jury to disregard it, while in the present case the trial judge merely cautioned the solicitor-general to confine his argument to the evidence; and (2) in the cited cases the argument was to the effect that the accused "may be pardoned," while in the present case the argument was, in effect, a positive statement that the accused would be pardoned.

The present case is not distinguishable from the cases cited upon these grounds. In the *Lucas* case, supra, it appeared that "the court failed to rebuke the solicitor-general or to instruct the jury with reference thereto." Nevertheless, this court held that it was not improper to allow counsel to refer to the possibility of the accused's being pardoned if he should be recommended to mercy. This is a full-bench decision. In the *Thornton* case, supra, the State's attorney stated that the accused "will be pardoned or paroled by the Prison Board in a few years," and this court held: "The present case is not distinguishable on the ground that the solicitor-general made a positive assertion of fact that the defendant would be pardoned, whereas in the previous cases, supra, the statement passed on referred only to the possibility of the defendant's pardon. The statement by the prosecuting attorney . . was obviously based on mere conjecture." This, too, is a full-bench decision.

Under the cited authorities, we are constrained to hold that the remarks of the solicitor-general in the present case do not require the grant of a new trial. The writer, speaking for himself alone, concurs in this view only because he feels compelled to do so under the previous full-bench decisions of this court. But it is his·personal view that argument such as that complained of here is improper, and that a trial judge should act promptly to require the State's counsel to desist from such argument and to instruct the jury to disregard it, and that, in the absence of such action, a refusal to declare a mistrial on motion ought to be reversed.

■

■ After the jury had retired to consider the case, they returned to the courtroom, and the following occurred: The Court: "Gentlemen, I had your message. Is it a question of law or a question of fact?" The Foreman: "I would say it was a question of law. We can not agree. We have talked and talked and then cussed and we don't seem to be able to agree. . . We would like to know the point of demarcation between a verdict of guilty with a recommendation of mercy." The court then stated the effect of a verdict of guilty with and without a recommendation. The Foreman: "That is not the point. They seem to want to know why we should bring that verdict of guilty and recommend—where is the line? That is what we want to know." Again the court stated the effect of various verdicts, stating: "Now, maybe I might be able to clear it up this way. If you find the defendant not guilty, he is released. If you find him guilty of the crime of murder, then if you say nothing more in your verdict, the law makes it mandatory that he be punished by electrocution. Then, after you have found him guilty, if you desire to recommend him to the mercy of the court, or recommend that he be punished by confinement in the penitentiary for life, that would be mandatory as his punishment." The Foreman: "What is to influence us between a verdict strictly for guilty or with recommendation?" The Court: "That is entirely within the discretion of the jury as to whether they will recommend mercy or not." The Foreman: "That is all. Thank you, sir." The court then instructed the jury that they would be furnished with supper and to come back and deliberate further after they had eaten. The Foreman: "What if we can't agree?" The Court: "Gentlemen of the jury, it is the duty of a juror to honestly and diligently seek to find the truth and render a verdict accordingly. And you all deliberate over this, and the lawyers have been over it for several hours and you all have had only a short time. You all are as good jurors as you will find anywhere, highly intelligent and capable, and you all can deliberate on it some more after you have had supper. It is expensive to try cases and not finish them up, and you all do the best you can. You all stay together; don't separate; don't talk to anybody, and don't allow anybody to talk to you, or in your presence or hearing."

This occurrence is made the basis of two special grounds of the motion for new trial. First, it is insisted that the court erred in urging the jury to agree on a verdict, after the foreman "had made the court understand that the entire jury was in favor of a verdict of guilty and the only question between and among the jurors was as to whether a recommendation of mercy should be made"; that the defendant was deprived of the right to have the jury deliberate in a secret fashion without disclosing the standing of the jurors prior to the rendition of a verdict; that it allowed the court, with knowledge of the fact that the defendant could not benefit by an acquittal, to control the length of time which the jury would be held together; that the court failed to answer the question propounded, "What if we can't agree?" when the court should have told the jury that they "would be finally discharged and a mistrial declared if they continued to fail to agree."

There is no merit in these contentions. It does not appear that counsel for the accused objected to the procedure, made any sort of motion, or requested any further instructions from the court. "The trial judge may properly admonish the jury as to the propriety and importance of agreeing on a verdict, and may urge them to make every effort to harmonize their views and to agree on a verdict consistent with their consciences, care being taken not to suggest what verdict is proper, or to give instructions having a tendency to coerce the jury into agreeing on a verdict, or inviting them to disagree. The judge may urge, as reasons for agreeing on a verdict, the time and expenses involved in the trial, and the time and expense which a new trial will entail." *Yancy* v. *State*, 173 *Ga.* 685 (5) (160 S. E. 867). Here the trial judge very cautiously charged the jury as to the three forms of verdicts that might be returned, without intimating what verdict ought to be rendered. He refrained from stating that a mistrial would be declared if the jury could not agree, and merely requested them to return after they had eaten supper and give the case further deliberation, which was, we think, a wise and judicious handling of the matter. None of the language employed by the court could have had the effect of inviting the jury to disagree or unduly urging or coercing the jury to find

a verdict in the case. The matter was more judiciously handled than in several of the cases cited and discussed in the *Yancy* case, supra, where this court held that no error was committed.

Finally, it is insisted that the trial court erred in failing to properly answer the question of the foreman of the jury with regard to what was to influence the jury between a verdict of guilty or guilty with a recommendation, when the trial judge stated: "That is entirely within the discretion of the jury as to whether they will recommend mercy or not." It is insisted that the court's instructions were confusing and led the jury to believe that they must act within a discretion, upon a good reason, and with "caution" in recommending mercy; that the court should have charged the jury "what considerations or lack of considerations should control them in deciding between a verdict of guilty and guilty with a recommendation of mercy."

There is no merit in these contentions. The jury, presumably being men of intelligence, could not have been misled by the instructions, and of necessity must have known that the matter of recommending mercy was within their discretion, and a recommendation or refusal could be made with or without reason. In *Hicks* v. *State*, 196 *Ga.* 671 (2) (27 S. E. 2d, 307), it was held: "The jury in determining whether or not to recommend mercy is not controlled by any rule of law, nor could the court under any circumstances instruct them as to when they should, or should not, make such a recommendation. They may do so with or without a reason, and they may decline to do so with or without a reason. It is a matter wholly within their discretion." In *Lucas* v. *State*, supra, at page 325, this court said, with regard to the jury's right to recommend mercy: "It is in their discretion whether they will or will not recommend, and the law prescribes no rule for the exercise of that discretion. Penal Code, § 63; *Hill* v. *State*, 72 *Ga.* 131; *Thomas* v. *State*, 89 *Ga.* 480 (15 S. E. 537). . . For ourselves, we think little, if anything, can be added to the words of the statute without qualifying it."

The trial judge clearly stated the law. To have undertaken to charge the jury, as counsel insist should have been done, as to

"what considerations or lack of considerations should control them in deciding between a verdict of guilty and guilty with a recommendation of mercy" would likely have been to err.

*Judgment affirmed. All the Justices concur.*