363 S.E.2d 504

**STATE of West Virginia**

v.

**Michael Dean MILLER.**

No. 17490.

Supreme Court of Appeals of
West Virginia.

Nov. 19, 1987.

David W. Johnson, Asst. Atty. Gen., for the State.

Gregory J. Campbell, Charleston, for defendant.

MILLER, Justice:

The defendant appeals from a conviction in the Circuit Court of Marshall County of first degree murder without a recommendation of mercy for having killed a fellow inmate at the West Virginia State Penitentiary. The defendant assigns three errors. First, he contends the trial court gave an erroneous instruction to the jury on the factors it could consider in determining whether to grant mercy in the event it found him guilty of murder in the first degree. Second, he contends that the State failed to disclose his incriminating oral statements to two inmates at the Penitentiary. Third, he contends the prosecuting attorney engaged in prosecutorial misconduct by obtaining from the circuit court a grant of immunity to two inmates who testified against him.

## I.

■ The defendant maintains that State's Instruction No. 4,[1] which contains a

1. State's Instruction No. 4, with the portions objected to italicized, reads:

"The Court instructs the jury that in determining whether to recommend mercy you must consider all of the facts and circumstances surrounding the charge, including the degree of culpability of the defendant in regard to the commission of the crime, and whether any of the following mitigating circumstances were present: A, the defendant has no significant history of prior criminal activity; B, the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance; C, the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act; D, the murder was committed un-

der circumstances while [sic] the defendant believed to provide a moral justification or extenuation for his conduct; E, the defendant was an accomplice in a murder committed by another person and his participation in the homicidal act was relatively minor; F, the defendant acted under duress or under the domination of another person; G, *at the time of the murder the capacity of the defendant to appreciate the criminality, that is, wrongfulness, of his conduct or to conform his conduct to the requirements of law [was] impaired as a result of mental disease or defect or intoxication;* H, the youth of the defendant at the time of the crime.

"*In determining whether to grant mercy you should not consider sympathy as a factor.*" (Emphasis added.)

list of factors for the jury to consider in recommending mercy, was erroneous. He points out that this type of instruction has never been sanctioned by this Court, and argues it is misleading and confusing. He emphasizes the fact that after the jury began its deliberations, it sent a note asking the court to reread the list of factors it should consider in determining whether to recommend mercy. Ten minutes after the jury was given a copy of all the instructions and advised that State's Instruction No. 4 was the one it had expressed an interest in reviewing, it reached a verdict without a recommendation of mercy.

The State argues that the factors listed in State's Instruction No. 4 were generally held to be proper for jury consideration in *State ex rel. Leach v. Hamilton*, W.Va., 280 S.E.2d 62 (1980), and urges this Court to specifically adopt this instruction as a permissible method for guiding the jury in its deliberation as to mercy, in what it submits would otherwise be a vague and confusing task. Furthermore, the State argues that the defendant only preserved by objection two very limited areas of the instruction. This was an objection to Section G dealing with insanity and intoxication, and the last sentence of the instruction relating to not utilizing sympathy to grant mercy.

We have traditionally held that it is the mandatory duty of the trial court to instruct the jury that it may add a recommendation of mercy to its first degree murder verdict.[2] Syllabus Point 3, *State v. Lindsey*, 160 W.Va. 284, 233 S.E.2d 734 (1977)[3]; *see also*, Syllabus Point 4, *State v. Headley*, 168 W.Va. 138, 282 S.E.2d 872 (1981); Syllabus Point 3, *State v. Loveless*, 139 W.Va. 454, 80 S.E.2d 442 (1954). This rule is based on the fact that juries in this State are given a limited sentencing role by letting them decide whether to return a first degree murder conviction with a recommendation of mercy under the provisions of W.Va.Code, 62–3–15 (1965).[4] This statute provides that in the event of a recommendation of mercy, the defendant is then eligible for parole under the provisions of W.Va.Code, 62–12–13(a)(1)(B).[5] We pointed out the jury's limited role in a

This language is apparently taken from § 210.6(4) of the Model Penal Code, (Proposed Official Draft, 1962), which relates to mitigating factors in determining whether the death penalty is appropriate. This language was set out in Justice Neely's dissent in *State ex rel. Rasnake v. Narick*, 159 W.Va. 542, 227 S.E.2d 203 (1976).

2. In *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1982), the defendant had requested at trial that the court not instruct as to a recommendation of mercy and the court refused this request. On appeal, the defendant claimed this was error. We held it was not, and stated in Syllabus Point 3:

"It is the mandatory duty of the trial court to instruct the jury that it may add a recommendation of mercy to a verdict of murder of the first degree and such duty shall be fulfilled by the trial court over the objection of the defendant unless it affirmatively appears from the record that the defendant understands the consequences of his action."

3. Syllabus Point 3 of *Lindsey*, states:

"In a case in which a jury may return a verdict of guilty of murder of the first degree, it is the mandatory duty of the trial court, without request, to instruct the jury that to such verdict it may add a recommendation of mercy, that such recommendation would mean that the defendant could be eligible for parole consideration only after having served a minimum of ten years and that otherwise the defendant would be confined to the penitentiary for life without possibility of parole."

4. W.Va.Code, 62–3–15 (1965), provides, in relevant part, as follows:

"If a person indicted for murder be found by the jury guilty thereof, they shall in their verdict find whether he is guilty of murder of the first degree or second degree. If the person indicted for murder is found by the jury guilty thereof, and if the jury find in their verdict that he is guilty of murder of the first degree ... he shall be punished by confinement in the penitentiary for life, and he, notwithstanding the provisions of article twelve [§ 62–12–1 et seq.], chapter sixty-two of this Code, shall not be eligible for parole: Provided, that *the jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole* in accordance with the provisions of said article twelve...." (Emphasis added.)

5. A defendant sentenced to life, with mercy, is entitled to be considered for release on parole after serving a minimum of ten years in prison. W.Va.Code, 62–12–13(a)(1)(B). Eligibility for parole, of course, does not insure or entitle a prisoner to release from prison on parole. *State v. Lindsey, supra.*

murder case in *State ex rel. Leach v. Hamilton,* W.Va., 280 S.E.2d at 64:

"The West Virginia first-degree murder statute leaves very little sentencing discretion to juries. A finding of guilt automatically results in a life sentence and a jury's only discretion is whether to grant parole eligibility by recommending mercy. The factors that a jury should consider in deciding whether to recommend mercy are not delineated, but these are for legislative determination."

Contrary to the State's argument, we did not suggest in *State ex rel. Leach v. Hamilton, supra,* that factors for jury consideration of mercy should be delineated in an instruction. *Leach* dealt with the question of whether a unitary trial was constitutional on a murder charge. We relied on our earlier decision of *State ex rel. Rasnake v. Narick,* 159 W.Va. 542, 227 S.E.2d 203 (1976), which rejected a similar claim for bifurcation to a charge of rape under former W.Va.Code, 61–2–15 (1965). In the course of delineating what evidence a defendant might seek to introduce at a unitary trial, just as easily as at a bifurcated trial, that would motivate a jury to recommend mercy, we listed: "defendant's age, mental state, defenses, family responsibilities, the nature of the offense and circumstances surrounding the crime." W.Va., 280 S.E.2d at 65. Nowhere in the opinion did we suggest, much less direct, that a jury should be instructed on factors in determining whether to recommend mercy.

It does not appear that any court has considered whether a detailed jury instruction on the mercy issue should be given where there is no death penalty. In the past, a number of states had statutes permitting the jury in homicide cases to recommend mercy and thereby avoid imposition of the death penalty.[6] In a number of cases, an issue arose as to whether the jury had been properly instructed on their right to recommend mercy. This type of case is illustrated by *McLendon v. State,* 205 Ga. 55, 52 S.E.2d 294 (1949), where the defendant appealed from a death sentence for first degree murder under a statute which permitted the jury to recommend mercy, resulting in a sentence of life imprisonment. At trial, the jury foreman questioned the trial court as to what the jury should consider in deciding to recommend mercy. The trial court simply stated that this issue was entirely within the discretion of the jury.

On appeal the defendant argued this statement was misleading and that the trial court should have charged the jury as to factors it should consider in deciding whether or not to recommend mercy. The court, in rejecting this claim, stated:

"There is no merit in these contentions. The jury, presumably being men of intelligence, could not have been misled by the instructions, and of necessity must have known that the matter of recommending mercy was within their discretion, and a recommendation or refusal could be made with or without reason. In *Hicks v. State,* 196 Ga. 671(2), 27 S.E.2d 307, 309, it was held: 'The jury in determining whether or not to recommend mercy is not controlled by any rule of law, nor could the court under any circumstances instruct them as to when they should, or should not, make such a recommendation. They may do so with or without reason, and they may decline to do so with or without a reason. It is a matter wholly within their discretion.' ... 'For ourselves, we think little, if anything, can be added to the words of the statute without qualifying it.'"[7] 205 Ga. at 68, 52 S.E.2d at 302.

**6.** West Virginia was one of those states until 1965, when the legislature abolished the death penalty. 1965 W.Va.Acts, ch. 40.

**7.** This law in death penalty cases has been relegated to judicial history by decisions of the United States Supreme Court beginning with *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which recognized that a

qualitative difference exists between a death sentence and other forms of punishment. The Supreme Court held that capital sentencing statutes must provide specific guidelines for determining when the death penalty may be imposed, in order to direct and limit the discretion of the ultimate sentencing authority. *E.g., Sumner v. Shuman,* 483 U.S. 66, 107 S.Ct. 2716, 97

More recently, in *Manor v. State*, 223 Ga. 594, 157 S.E.2d 431 (1967), *vacated in part*, 408 U.S. 935, 92 S.Ct. 2256, 33 L.Ed.2d 750 (1972), the Georgia court held that the trial court properly refused to give an instruction offered by the defendant in a capital case. The instruction would have told the jury it should consider the defendant's intelligence, his mentality and comprehension in determining whether to recommend mercy. The refusal to give such an instruction was upheld on the ground that it would interfere with the jury's unlimited discretion to decide whether to recommend mercy.[8]

In jurisdictions where the decision to recommend mercy is left entirely within the discretion of the jury and is made binding on the trial court, it is uniformly held that an instruction which enumerates instances or suggests when a mercy recommendation might be appropriate is reversible error. *Cohen v. State*, 116 Ga. 573, 42 S.E. 781 (1902); *State v. Martin*, 92 N.J.L. 436, 106 A. 385 (1919); *State v. Jones*, 201 S.C. 403, 23 S.E.2d 387 (1942); Annot., 138 A.L.R. 1222 (1942); Annot., 87 A.L.R. 1363 (1933); Annot., 17 A.L.R. 1117, 1129 (1922).

■ One of the difficulties with the mercy instruction in this case is that it contains matters that are directly related to possible defenses to a criminal charge. As a consequence, the jury in its deliberations could be deflected from deciding the merits of a defense issue and treat it as part of the mercy recommendation. Section D of the instruction tells the jury that it must consider whether "the murder was committed under circumstances while [sic] the defendant believed to provide a moral justification or extenuation for his conduct." This is analogous to the concept of self-defense,

which provides a justification or excuse for a killing, and is a complete defense to criminal liability. *E.g., State v. Baker*, 177 W.Va. 769, 356 S.E.2d 862 (1987); *State v. W.J.B.*, 166 W.Va. 602, 276 S.E.2d 550 (1981). Even where the self-defense act is not a complete defense, it may serve to reduce murder to voluntary manslaughter because of provocation. *See, State v. Starkey*, 161 W.Va. 517, 527, n. 7, 244 S.E.2d 219, 225, n. 7 (1978); *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978).

Much the same problem exists as to Section B relating to whether the murder was committed "while the defendant was under the influence of extreme mental or emotional disturbance," and Section G which dealt directly with mental disease and intoxication at the time of the crime. These factors are recognized defenses to a crime such as the insanity defense under *State v. Bragg*, 160 W.Va. 455, 235 S.E.2d 466 (1977), or a diminished mental capacity defense which may negate a specific criminal intent. *See, State v. Simmons*, 172 W.Va. 590, 309 S.E.2d 89 (1983). We have also recognized that extreme intoxication can negate specific criminal intent. *State v. Keeton*, 166 W.Va. 77, 272 S.E.2d 817 (1980).

Finally, and perhaps most tellingly, the instruction did not relate to any evidence that was actually before the jury at the trial. Consequently, the jury was left in the posture of not having the unfettered discretion of making the determination of mercy based solely on their impression of the defendant and the circumstances of the case. Rather, it was given specific guidelines, none of which applied to the evidence, and in effect advised that if it found none

---

L.Ed.2d 56 (1987); *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).

No argument is made here that the refusal to instruct on mercy factors constitutes a constitutional violation. In *State ex rel. Leach v. Hamilton, supra,* we pointed out that the Indiana Supreme Court in *Wilson v. State*, 268 Ind. 112, 374 N.E.2d 45 (1978), had refused from a constitutional standpoint to require the giving of a mercy definition instruction in a life sentence case. The South Carolina Supreme Court

reached the same result in *State v. Smith*, 267 S.C. 527, 229 S.E.2d 851 (1976).

**8.** In several states courts have found no reversible error as to a general instruction that advises the jury that the matter of mercy is within its sole discretion, but that it must not be done out of sympathy and should be based on all of the circumstances of the case. *E.g., State v. Lee*, 36 Del. 11, 171 A. 195 (1933); *State v. Caldwell*, 135 Ohio St. 424, 21 N.E.2d 343 (1939). *See generally*, Annot., 138 A.L.R. 1230 (1942).

of these existed, then mercy was not available.[9]

Consequently, we hold that an instruction outlining factors which a jury should consider in determining whether to grant mercy in a first degree murder case should not be given.

Although the State argues that the defendant only objected to portions of this instruction, we believe there was a sufficient objection to preserve the point. This is particularly true in view of the fact that it was this specific instruction that the jury requested a review of after it had commenced its deliberations. Shortly after the jury received it, it returned a verdict without a recommendation of mercy.

## II.

■ The defendant next contends that the prosecution violated Rule 16(a)(1)(A) of the West Virginia Rules of Criminal Procedure by not supplying the substance of incriminating oral statements he allegedly had made to fellow inmates after the crime was committed. The defendant contends the nondisclosure was prejudicial.

The State's brief does not address the issue of whether the prosecution violated Rule 16. Rather, it relies on cases such as *State v. Lassiter*, 177 W.Va. 499, 354 S.E.2d 595 (1987), and *State v. Duell*, 175 W.Va. 233, 332 S.E.2d 246 (1985), where we discussed whether nondisclosure was prejudicial under Syllabus Point 2 of *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980):

··"When a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case."

The record shows that after the jury was impaneled on the first day of trial, the defense was provided with the written statements two prison inmates, Jack Hubbard and Merle Cutright, had made to law enforcement officers. Neither of these statements indicated that the defendant had made any incriminating comments to these individuals after the killing.

On the first day of trial, Mr. Hubbard testified in detail about a plot by members of the Avengers' Motorcycle Club to kill the victim. Mr. Hubbard testified that he and another prisoner, Mr. Cutright, had participated in the crime by distracting correctional officers at the top of the stairs near a hallway where the killing took place. The plan had been for the defendant to grab the victim and for another inmate, Harry Jarrell, to stab him to death.

Mr. Hubbard testified that he did not, however, see the actual stabbing, but did indicate he saw the defendant in the vicinity of the stairs along with the victim and the co-defendant, Mr. Jarrell. He also heard the victim cry out. Mr. Hubbard then related that several days following the murder, the defendant had stated that he grabbed the victim as he came through the basement door, and had laughed about how the co-defendant, Mr. Jarrell, had nearly stabbed him instead of the victim.

Prior to commencement of trial the next day, counsel for the defendant moved for a mistrial due to the nondisclosure of the defendant's incriminating oral statements to Mr. Hubbard. He also moved to strike Mr. Hubbard's testimony concerning the oral statements and stated that any such testimony from Mr. Cutright should not be permitted. The trial court acknowledged that a serious question was presented as to whether Rule 16(a)(1)(A) of the West Virginia Rules of Criminal Procedure [10] had

---

9. This was precisely the position taken by the prosecutor in his final closing argument. He went through the factors listed in the mercy instruction and pointed out to the jury that none of them existed under the evidence.

10. Rule 16(a)(1)(A), W.Va.R.Cr.P., provides in relevant part:
   "(a) Disclosure of Evidence by the State.
   "(1) Information Subject to Disclosure.
   · "(A) Statement of Defendant.—Upon request of a defendant the state shall permit the

been violated because of the failure to disclose, but denied the motion for mistrial.

The State then called Mr. Cutright, who corroborated the testimony of Mr. Hubbard. He also testified that a few days after the killing he had also heard the defendant describe how he had grabbed the victim and had nearly been stabbed himself by Mr. Jarrell. After the trial was concluded, the defendant moved for a new trial under Rule 33 on the basis that the Rule 16 violation had prejudiced him in the preparation and presentment of his defense. He emphasized that he was deprived of an opportunity to interview witnesses allegedly present when his statements were made.

It is apparent that the State violated Rule 16 by not disclosing the substance of the defendant's alleged oral incriminating statements it intended to use at trial. The defendant filed a timely discovery motion under Rule 16, specifically requesting any such statements. The State did not argue below that it was unaware of these incriminating oral statements, but only that Rule 16(a)(1)(A) referred to statements made to law enforcement officers.

■ This argument is not pressed on appeal, for as we observed in *State v. Lam-*

*bert,* 175 W.Va. 141, 331 S.E.2d 873, 878 (1985), our Rule 16(a)(1)(A) of the West Virginia Rules of Criminal Procedure, unlike its federal counterpart, requires the prosecution to disclose the substance of any oral statement of the defendant it intends to offer in evidence at trial, and is not limited to oral statements made to law enforcement officers. Consequently, this portion of our Rule 16 is broader in scope than the federal rule [11] and follows the American Bar Association's model standards on pre-trial discovery in criminal proceedings.[12] The question that remains here is whether the nondisclosure constitutes reversible error.

■ Our traditional appellate standard for determining whether the failure to comply with court-ordered pretrial discovery is prejudicial is contained in Syllabus Point 2 of *State v. Grimm, supra.* It essentially involves a two-pronged inquiry: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case. This was evolved prior to the adoption of our Rules of Criminal Procedure,[13] but is applied to Rule 16 discovery.

defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known, or by some exercise of due diligence may become known, to the attorney for the state; *the substance of any oral statement which the state intends to offer in evidence at the trial made by the defendant whether before or after arrest;* and recorded testimony of the defendant before a grand jury which relates to the offense charged." (Emphasis added.)

**11.** Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure provides, as pertinent to this issue, that the government must disclose "the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest *in response to interrogation by any person then known to the defendant to be a government agent....*" (Emphasis added.) *See,* Annot. 39 A.L.R.Fed. 432 (1978).

**12.** Standard 11–2.1(a)(ii) of the American Bar Association's Standards for Criminal Justice relating to pretrial discovery provides that: "Upon

the request of the defense, the prosecuting attorney shall disclose to defense counsel all of the material and information within the prosecutor's possession or control including but not limited to any written or recorded statements and the substance of any oral statements made by the accused or made by a codefendant...." The commentary indicates that this standard implicitly rejects miscellaneous exceptions to discoverability, and that other model standards have also adopted an essentially unqualified rule for the discovery of a defendant's statements. Vol. II, ABA Standards for Criminal Justice (2d Ed.1980).

**13.** *State v. Grimm, supra,* was predicated on *State v. Cowan,* 156 W.Va. 827, 197 S.E.2d 641 (1973), which cited W.Va.Code, 62–1B–2 relating to discovery in criminal cases and concluded that once such discovery was ordered, the prosecution's failure to disclose may be reversible error if it is prejudicial. In the last sentence of the single Syllabus Point of *State v. Cowan,* this was stated: "The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make ... [the disclosure] hampers the preparation and presentation of the defendant's case."

*E.g., State v. Hager,* 176 W.Va. 313, 342 S.E.2d 281 (1986); *State v. Duell,* 175 W.Va. 233, 332 S.E.2d 246 (1985); *State v. Fauber,* 175 W.Va. 324, 332 S.E.2d 625 (1985). This appellate standard of review basically comports with federal court decisions relating to whether the failure to comply with court-ordered discovery under Federal Rule 16 constitutes reversible error, as illustrated by *United States v. Barragan,* 793 F.2d 1255, 1259 (11th Cir.1986):

> "This Court will not reverse a conviction based on a violation of Fed. R.Crim.P. 16(a)(1)(A) unless the appellant demonstrates that the violation prejudiced his substantial rights. *See United States v. Rodriguez,* 765 F.2d 1546, 1557 (11th Cir.1985).... In determining whether substantial prejudice exists, this Court considers whether the defendant was unduly surprised and did not have an adequate opportunity to prepare a defense, or whether the mistake had substantial influence on the jury. *Id.*"

*See also United States v. McAllister,* 747 F.2d 1273 (9th Cir.1984), *cert. denied,* 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 76 (1985); *United States v. Jackson,* 757 F.2d 1486 (4th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 407, 88 L.Ed.2d 358 (1985); 2 C. Wright, *Federal Practice and Procedure* § 261 (1982).

Admittedly, *Grimm*'s standard provides little specific guidance to a trial court which is confronted with a late discovery issue. We have not had occasion to emphasize Rule 16(d)(2) which enables a trial court to impose sanctions that may have the effect of curing a late discovery problem.[14] This portion of our Rule 16 is identical to Rule 16(d)(2) of the Federal Rules of Criminal Procedure. There are numerous federal and state cases dealing with late discovery problems which can be divided into two major categories.[15]

The first is where there is late discovery in the pretrial stage of the case and the party should be aware of the material. The solution is fairly simple as outlined in 2 C. Wright, *supra,* § 260: "If a request for discovery is refused or not responded to in the pretrial stage, it is unlikely that there will be a need for sanctions. A motion to compel disclosure is ordinarily enough to remedy the situation."

The second and more difficult category is exemplified by the present case where the discovery failure is revealed at trial. As *Wright* notes, all courts agree that the rule "gives the [trial] court broad discretion in deciding what should then be done." 2 C. Wright, *supra* at § 260. The threshold inquiry is to "take into account the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance [or recess if the trial has begun][16], and any other relevant circumstances." 2 C. Wright, *supra* at § 260. Some courts have added that consideration should be given to "whether the prosecution acted in bad faith in violating the ...

In *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982), and *State v. Brewster,* 164 W.Va. 173, 261 S.E.2d 77 (1979), we spoke to the distinction between court-ordered discovery, which is based on a motion or general court order and can be rather far ranging, and the constitutionally required disclosure of exculpatory material based on *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny where no motion is required. *See also, State v. Ellis,* 176 W.Va. 316, 342 S.E.2d 285 (1986).

**14.** Rule 16(d)(2), W.Va.R.Cr.P., provides:

"Failure to Comply with a Request.—If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just."

**15.** *See* Annot., 33 A.L.R.4th 301 (1984); Annot., 27 A.L.R.4th 105 (1984); Annot., 49 A.L.R.Fed. 432 (1978).

**16.** The bracketed language is not in C. Wright, *supra,* but is found in a number of cases and is too obvious to need any elaboration. *E.g., United States v. Euceda–Hernandez,* 768 F.2d 1307, 1312 (11th Cir.1985); *Gorham v. Wainwright,* 588 F.2d 178 (5th Cir.1978); *United States v. Pineros,* 532 F.2d 868 (2d Cir.1976); *Robinson v. State,* 450 N.E.2d 51 (Ind.1983); *State v. McClintick,* 315 N.C. 649, 340 S.E.2d 41 (1986).

discovery order." *United States v. Fernandez,* 780 F.2d 1573 (11th Cir.1986), citing *United States v. Soto,* 711 F.2d 1558 (11th Cir.1983).[17]

The critical question is the degree of prejudice suffered and whether this can be offset by appropriate remedial sanctions. The rule enumerates several sanctions, such as a continuance or prohibiting the use of the evidence[18] that was not disclosed, and contains a general catchall phrase "such other order as it deems just."[19] Rule 16(d)(2).

Here the trial court utilized no sanctions to alleviate what was recognized as a prejudicial situation. The testimony of Mr. Hubbard was already in the case and defense counsel had made no contemporaneous objection, but moved to strike the testimony or declare a mistrial.[20] The trial court could have advised the jury to disregard that portion of Mr. Hubbard's testimony dealing with the defendant's oral incriminating statement made after the killing. The court could also have prevented Mr. Cutright, who had not testified, from mentioning the defendant's oral statements.

We need not determine, in view of the mercy instruction error, whether this error, standing alone, would be sufficient to warrant a new trial. In a number of cases, courts have concluded that the overwhelming nature of the State's case renders the late discovery nonprejudicial. *E.g., United States v. Scafe,* 822 F.2d 928 (10th Cir. 1987); *United States v. McKinney,* 758 F.2d 1036 (5th Cir.1985); *Montgomery v.*

State, 504 So.2d 370 (Ala.Cr.App.1987); *Dickey v. State,* 179 Ga.App. 383, 346 S.E.2d 864 (1986); *State v. Busby,* 464 So.2d 262 (La.1985); *State v. Moore,* 703 S.W.2d 183 (Tenn.Cr.App.1985). We are doubtful that this rule could be applied here.

### III.

■ As a final assignment the defendant contends that the prosecution granted immunity from prosecution to both Mr. Hubbard and Mr. Cutright without court approval. The defense, on discovering this fact, sought by way of a mandamus action in the circuit court to compel the prosecutor to take the evidence against Mr. Hubbard and Mr. Cutright to the grand jury. The prosecutor then moved the court to grant immunity to them.

The court set both of these matters for a consolidated hearing, but took the immunity question first, reasoning that if it granted immunity then the mandamus was moot. The court did grant immunity, but the defendant now contends that the immunity procedure was invalid under *Myers v. Frazier,* 173 W.Va. 658, 319 S.E.2d 782 (1984).

We believe the defendant misperceives our discussion in *Myers* which dealt with the power of a prosecutor to grant immunity against prosecution. We initially pointed out that there was no common law authority for a prosecutor to grant immunity, and stated in Syllabus Point 16:

"Most courts have held that in the absence of some express constitutional

---

**17.** Presumably, where the party has acted in bad faith, an increased sanction is warranted, not just to cure the prejudice, but to insure that the bad faith will not be repeated.

**18.** Rule 16(d)(2) operates on both parties, but some commentators, and at least one court, have suggested that excluding key evidence offered by the defendant because of the failure to disclose, may give rise to a constitutional due process problem. *State v. Marchellino,* 304 N.W.2d 252 (Iowa 1981). *See generally,* 2 C. Wright, *supra* at § 260, nn. 10 and 11.

**19.** Other sanctions have included a mistrial, *United States v. Padrone,* 406 F.2d 560 (2d Cir. 1969); or exclusion of the evidence in the state's case-in-chief, but permitting it for impeachment

of the defendant since he was made aware of the statement before deciding to testify. *United States v. Collins,* 764 F.2d 647 (9th Cir.1985).

**20.** The failure to ask for a recess or a continuance to attempt to meet the late disclosed evidence or request sanctions, such as excluding or striking the evidence, are also factors courts have considered in determining whether the error would warrant granting a new trial. *E.g., United States v. James,* 495 F.2d 434 (5th Cir. 1974), *cert. denied,* 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144 (1974); *Commonwealth v. Lapka,* 13 Mass.App. 24, 429 N.E.2d 1029 (1982); *Commonwealth v. Cundriff,* 382 Mass. 137, 415 N.E.2d 172, 17 A.L.R.4th 287 (1980), *cert. denied,* 451 U.S. 973, 101 S.Ct. 2054, 68 L.Ed.2d 353 (1981).

or statutory provision, a prosecutor has no inherent authority to grant immunity against prosecution."

 We also pointed out in *Myers* that W.Va.Code, 57–5–2, placed the power of immunization with the circuit court. Even though the prosecutor's initial attempt to grant immunity could not confer it, the subsequent decision by the circuit court to bestow it renders this issue moot.

For the foregoing reasons, we reverse the judgment of the Circuit Court of Marshall County.

Reversed and remanded.